We are now recording. Hear ye, hear ye, this Honorable Appellate Fortford, the Second Judicial District, is now in session. The Honorable Robert D. McLaren presiding. Your Honor's second case on the docket this morning is 2-21-0754 N. Ray, the marriage of Lawrence Daniel Fowle, Petitioner Appellant, and Jacqueline Stacey Fowle, Respondent Appellee. Arguing on behalf of the Appellant, Mr. Daniel Kessler. Arguing on behalf of the Appellee, Mr. Joshua T. Friedman. Thank you. Mr. Kessler, you may proceed. Morning, judges. May it please the court, my name is Daniel Kessler of Deuces Wittenberg-Kennigsberger on behalf of Petitioner Appellant Danny Fowle. In our practice, as in every practice, sometimes mistakes are made. In certain circumstances, depending upon the facts and equities, the court has authority to correct those mistakes. Parties to litigation are not necessarily forever bound to adhere to mutually made mistakes. In a case like this one that involves a mutual mistake of fact, the court's purpose and obligation are to enforce the party's actual agreement and real intent, not typographical errors or mutual mathematical misconceptions. Danny Fowle may or may not ultimately prove his hearing on his petition to modify. At this stage, the court need not determine whether he's entitled to the relief he seeks. He is patently entitled to a hearing. Mr. Kessler, the vehicle that your client used was a 214-01 petition, and as a matter of law, those are to be filed within two years of the judgment date. Why was this filed, or on what premise was this filed, at about four to five years later? Three and a half. Thank you. Thank you, Justice Jorgensen, for correcting my math this morning. I never went to law school to add and subtract. So why did it take three and a half years, and what premise was used to bring it at three and a half years? As you're aware, 214-01 includes a two-year statute of limitations. Danny cites, however, to clear binding authority in asserting that Stacey can and should be stopped from raising any such statute of limitations as a defense in order to prevent injustice or fraud under circumstances in which the party seeking to assert the defense has conducted herself in a manner which reasonably induced the other party to follow a course of action that he otherwise would not have followed, and that would be to his detriment if he did not later repudiate it. Mr. Kessler, was there even a motion directed to the court after the judgment was issued, a motion to reconsider any language or to correct any language at that time? The parties divorced. Approximately six months subsequent to the divorce, the time of the divorce. But I'm talking about, no, I'm actually talking about within 30 days of the judgment being entered. Was there any motion to reconsider any issue raised in the judgment of dissolution of marriage? No, Judge. At that time, neither of the parties was aware of the mutual mistake effect contained in their judgment. Well, and that's an interesting question. When he then received the first payment, which I think, well, Justice Jergensen was within the two years. Thank you. Sorry. No, no, I'm glad you're helping here. When he received that, it was, and what that wasn't, that payment was not necessarily in conformance, was it? It was in conformance with the party's actual agreement and real intent, which was for Stacey Fall to pay to Danny from her otherwise equal share of the sale proceeds, the amount of $72,500. But is that what happened? That is indeed what happened. Stacey Fall voluntarily paid to Danny $72,500 from her share of the sale proceeds of the Roselle property. The mutual mistake contained within the party's judgment would have provided for that payment of $72,500 to be made off the top of the sale proceeds prior to their equal division. That was not consistent with the party's actual agreement and real intent, whereas Stacey's conduct was consistent with the party's actual agreement and real intent. And in that way, Stacey lulled Danny into having a false sense of obscurity that she shared his same understanding and belief. Her conduct, particularly when viewed in the light most favorable to Danny, demonstrates that she did have such shared understanding and belief. Viewed in the light most favorable to Danny, Stacey would not have otherwise paid tens of thousands of dollars to Danny without any investigation into the origin or merit of his request for same. But I don't believe there is a provision in the statutory authority for 214-01 to be lulled into a false sense of security as a specific condition. Is there? Not in the statute itself. In the case law, such as in the case of York v. Village of Wilmette, the law provides for a party such as Ms. Fall to be stopped from raising any statute of limitations as defense in circumstances like this. And it's not essential that her conduct was fraudulent in the strict legal sense the case makes clear. The test is whether in all of the circumstances of the case, conscience and duty of honest dealing should deny one the right to repudiate the consequences of her conduct. A person cannot justly or equitably lull her adversary into a false sense of security, causing the statute to bar his claim and then plead the very delay that her conduct caused. Well, but under most of the 214-01 petitions that we address deal with something unconscionable, something newly discovered that had been withheld. What is there in this case that fits those definitions? Well, the case of In Re Marriage of Johnson, which is cited in our brief, makes clear that 214-01 is in fact the proper vehicle for modifying a mutual mistake effect in a judgment. But a timely 214-01. Yes, and Mr. Fall's 214-01 petition is timely in view of Ms. Fall needing to be equitably stopped from raising the statute of limitations as a defense on account of her conduct reasonably inducing my client to have a false sense of security that there was no understanding, share a common understanding of their actual agreement and real intent, which her conduct makes abundantly clear, particularly when viewed in a light most favorable to Danny, which is at this stage the court's obligation. Well, the judge, the trial judge makes it pretty clear in his findings that your client doesn't even provide the language that's at issue or doesn't highlight the language that should have been in that marital settlement agreement and specifically says that even if he had found it timely, he would have had trouble with that issue. Did you provide language that should have been in that document, the marital settlement agreement? Well, what the marital settlement agreement should have simply provided for Ms. Fall to make the payment of $72,500 from her share of the sale proceeds rather than from the that the effect of distributing sale proceeds to Mr. Fall prior to their division would equate to his paying to himself half of the money that he needed to receive from Ms. Fall. And so that's straightforward. Now, the party's arranging for the sale proceeds as soon as they became available in the first instance for $72,500 to be distributed to Mr. Fall, that arose from the parties having prepared a marital balance sheet determined to allocate various assets to each of them in a certain fashion, which resulted in my clients having $132,000 less than he should have had relative to the the parties recognized that there were miscellaneous water vehicles that hadn't been included on the balance sheet. They determined that that would have a value of $17,000. They would award him that those miscellaneous water vehicles. They assessed incorrectly because of their mutual misconception. They assessed incorrectly that the $17,000 worth of water off of the $132,000 that my client was short relative to his receiving half of the marital estate. We're not going into the whole marital settlement agreement. We're talking about these proceeds. That's what I perceived from the petition, and I believe that's what Judge Cerny perceived from the petition. There may have been other issues that they didn't agree on, or they agreed on outside of the settlement agreement, and we're not going to talk about those, but the issue here is how did he not know that the payout of $72,500 came from the total and not just her share? How could he not have known that? Both parties did know that. Their mutual misconception was in believing that that would effectuate the equal division, which was their actual agreement and real intent. That's where they failed to. Unlike Johnson, this isn't a typographical error. This was a mathematical misconception. In fact, the parties made this same misconception at the same time that the parties sold this first property, the Roselle property. As Stacey admits in her petition for contempt, which is a judicial admission, the parties believed that when sale proceeds from the Roselle property were used to pay roughly $10,000 of taxes, that was my client's sole responsibility. In order to reimburse Stacey, they took that same amount, roughly $10,000 from my client's share of the sale proceeds, and gave it back to Stacey. They only recognized having made that mistake years later when all the rest of this mistake came to light. In the same fashion, the parties believed at that time that the use of shared proceeds prior to their division equated to Stacey's paying from her share those sale proceeds. Who drafted this marital settlement agreement, to your knowledge? It was mutually drafted. Okay. Do we know who precisely from this record drafted this portion of the marital settlement agreement? We do not know that precisely. But if it was as simple as putting in the word her share of the proceeds, and it's not there, that looks like on paper what they intended. How do we know otherwise? Well, again, Judge, my client should have the opportunity at hearing to present his evidence to explain how the parties both labored under the same mutual misconception. The parties understood as soon as the judgment was stamped that Ms. Fall was awarded assets that were already available, that were in excess of her half that the parties intended her to receive, and that my client received assets that were already available that were less than the half intended for him to receive. And it was also the case because of limited liquidity that the $30,000 he was to receive in exchange for his waiver of maintenance was not yet paid. As soon as one of these two properties of real estate sold and more liquidity became available, the parties intended before we having already received in excess of her half and Danny's having received less than his half. And that's where the notion came that before we take any other action, we have to correct for that. So Danny had received a certain sum less than the half we intended. We're going to need to pay him those funds before we do anything else with the remainder of the funds. Well, where was this payout going to show up? On the closing statement? On some receipts that your client would sign? How are we supposed to know how it happened? That wasn't specified, but that's where Ms. Fall's own conduct demonstrates her belief. The parties, it was she herself who determined, and it was several weeks after the sale of the parties equally, but for this mistake, similar to the one that they made in the judgment, where Ms. Fall received a reimbursement of $10,000, excuse me, on account of $10,000 having been paid from the shared proceeds toward this tax liability that was Danny's sole responsibility. Then from the proceeds which Ms. Fall had received, she paid from her share of the proceeds, the $72,500. Counselor, your time is up. Are there any other questions from the panel? No, I don't have any. Thank you. Thank you. You'll have an opportunity to make rebuttal. Thank you, Judge. Yes. Mr. Friedman, you may proceed. Mr. Friedman, you're not, you're still muted. You're muted. Yes, thank you. Sorry. Thank you. I think the place to start with this case is the statute of limitations. This petition was filed more than two years after entry of the judgment. In fact, it was filed closer to four years after entry of the judgment. The question that is hanging out there is whether there are any, if there's any legal support for the proposition that the doctrine of equitable applies to 1401 petitions. At the time that we briefed this matter, I couldn't find any reported case law that directly addressed this issue. I know that since we briefed this matter, that second district did come out with a case that addressed the issue under a doctrine of equitable tolling. Because it was so recent, I couldn't amend the record to add that authority. I don't know if I'm permitted to speak to that, but the concept is that 21401 contains the exceptions to the two-year limitations period. If the legislature had intended to create additional, that there be additional exceptions, then they would have put that in the statute. They didn't. It puts into question whether the doctrine of equitable estoppel should apply. Case law has been very consistent that the statute of limitations has been strictly construed that the courts have not wanted to add exceptions where the legislature had already determined what those exceptions would be. Mr. Friedman, let me just ask a factual question here as opposed to a legal one at this point. If in fact after the sale of the Roselle property, these adjustments were made as identified by Mr. Kessler and I think generally agreed by you in your brief, why now, and this 725 was paid according to what the parties had contemplated, $30,000 from her share for the maintenance and 425 from her share for this equal, because it was supposed to be an equal distribution essentially, and then sometimes they use the word equitable, but it started with equal. Why is she not dealing with that? Isn't she being fraudulent by not doing it after the sale of the second home? She wants to give him, she knows she owes him 725, and she's willing to give him 725, but she wants it from the entire proceeds, not her share of the proceeds. Ms. Fowle wanted enforcement of the marital settlement agreements provisions, and she made that clear as alleged in the petition. I'm stuck with the factual allegations in the petition, so I'm trying to be careful and not go outside the four corners of that document, so what I'm referring to is the allegation in the petition is that Stacey Fowle insisted that the agreement be enforced as written at that time, so Mr. Fowle knew in June of 2021, regardless of what happened before, he knew that Ms. Fowle was insisting that the agreement be enforced as written, and Mr. Fowle then waited six months to file a petition seeking relief, so even if this court were to determine that the doctrine of equitable estoppel applies to a 214-01 petition, the question remains whether he has pled sufficient facts in support of equitable estoppel, and part two is even if this court disagrees with the trial court and finds that he's pled sufficient facts, the second question is, well, he hasn't pled any facts as to why he waited six months after it, pursuant to the allegations in his own petition, he was aware that she was insisting that the agreement be enforced as written. I guess, but my question wasn't what she's, she didn't insist upon it upon the payment of the first one, the first house, the marital residence, did she? She just paid $72,500 from her portion. Well, so the only allegation in the petition is that Ms. Fowle paid $72,500, that's it, okay, and that's true, she did that, but does that single fact, and that is the only fact pled in the petition, does that single fact lead to the inference that she thought that there was a different agreement, that there was a mutual mistake, and the trial court correctly determined that that is really too far a leap in logic to get to that conclusion, and that that single allegation alone is not sufficient to establish the mutual element of mutual mistake, and, you know, that reasonable inferences, especially when looking at other provisions in the marital settlement agreement, which talks about an equitable distribution as opposed to, there's no reference in the agreement anywhere to an equal division, it's an equitable division, and also looking at the provision in the marital settlement agreement in paragraph 2.18, which repeats the language, the complained of language prior to the equal division five times, I mean, five times, this is no Scribner's error, this is no, didn't catch that little detail, it's very clear, and when you read that in connection with the other provisions in the agreement, it's just not, it's not reasonable to take that single factual allegation and reach the well, the mistake was mutual, there had to be more alleged, there had to be more facts alleged to establish that this mistake was mutual. Council, what was the citation on the case that you mentioned, equitable estoppel applied? The case I mentioned that was recently issued? Yes. That's City of Rockford v, I believe it's Gillis, G-I-L-L-E-S, 2022 ILAP second, 210521, this case was issued on November 29, 2022, and the court was directly addressing the issue of whether equitable tolling applied to a 21401 claim. And they found, in the case, found that it did not, is that correct? The case found that it did not apply, and they based the decision not on equitable tolling, but instead on the principles underlying 21401 and 21401C statute of limitations. What's the timeline between the sale of the first property where your client filed a petition for rule to show cause and the filing of the 21401? So it's actually the sale of the second property occurred in June of 2021. I believe our client filed a petition for rule in either October or November, November of 2021. And then Mr. Fowle filed his 21401 petition in January. Okay. I mean, you're off on all this. It was 2020. And then Mr. Fowle filed his 21401 petition in January of 2021. And I think you said it was six months apart? So the issue, yeah, six months between when, as alleged in his petition, when he knew Ms. Fowle was insisting that the marital settlement agreement be enforced as written and the date he filed his petition. Okay. Thank you. Well, Mr. Friedman, when I talked about equal and equitable, 2.18 of the marital settlement agreement says prior to the equal division between the parties of any net sale proceeds. So, I mean, there is some issue of equal. And if you look at the bottom line, it's pretty darn close to equal and they make it fairly equal by the proposed payments that were to be made to Mr. Fowle, correct? Well, that again, that takes us outside the four corners of the document. The opposing counsel refers to this marital settlement balance sheet, but it's not attached in the pleadings. It's not in the record on appeal. And so I can't comment on something that's not on the record. Well, you can comment on what this says. It says what it says, the equal division. It talks about the equal division of the sale proceeds after other things occur. Yeah, the net proceeds after other things occur. The other things that occurred aren't the payment of the $30,000 for maintenance. That's pretty obvious that that's being paid to him by her. And so I guess, where did the 42.5 come from? According to Mr. Kessler, it came off the top. Well, it's according to her share rather, I'm sorry. According to the Mr. Fowle were due prior to the equal division. So you sell one residence and the amounts should have been paid out of the sale proceeds prior to then the equal division of those sale proceeds. So it's getting from sort of a gross to a net. That's how you get to the net. She makes the payment out of the gross to him, and then they divide the balance. And that's what the agreement says. But according to evidence that I think was placed in this, this worksheet, or whatever you just called it, was presented to Justice Cerny, wasn't it? At this stage of the proceedings, it was attached to the 214-01? It was not. It's not in the record, Your Honor. And, and, you know, I look for it and it's not attached to the petition. It's, it's referenced in argument. But again, even then, counsel says, okay, yeah, the balance sheet's not equal. We admit that, you know, and, you know, because there are other, there's other property being divided outside of this balance sheet. And, and that's what's alleged in the petition. Okay. And, and so here, we don't have in the record a balance sheet, but what we do have is an allegation that there was a balance sheet, but the balance sheet wasn't equal because there's other property being divided outside of the balance sheet. Okay. Well, let's cut to the chase. Why would Mr. Fall pay for half of what Mrs. Fall owes him? Why would he? Judge, for me to answer that question, I'm going outside. No, you don't have to go outside. That was what she owed him $145,000. Because that's what the parties agreed. And so why exactly would he pay for a portion of that to himself? Because that's what they agreed to do in the agreement as part of the overall division of the marital estate. So you're arguing that you deny that there's a mutual mistake effect. Absolutely. So who made the mistake? $145,000 is $145,000. I'm not conceding that there's a mistake at all. You know, if, if there, if there's any claim of mistake, it would be unilateral by Mr. Fall. But, but Ms. Fall is not. These were the provisions she agreed to. And this was how she agreed to settle the case at the time. Were you trial counsel as well as appellate counsel? No, I was not your honor. Was someone in your firm trial counsel? Yes. Okay. And did that person help draft this proposed marital settlement agreement? Well, it's my understanding that opposing counsel drafted this section 2.18. But again, I don't push that because it's not in, it's not alleged anywhere. It's not within the four corners. All right. So, you know, if you can return to your argument, I'm okay. My questions right now. So I, you know, when I, I would say that the dispositive issue in this case, before you even get to whether there's a mutual mistake or not, is the timeliness of the filing of the petition. And, and the, the petition was not timely filed. It was filed more than two years after the statute of limitations and that the doctrine of equitable estoppel shouldn't be added as an additional exception to 2.14.01c. But even if this court were to consider that the only fact, the only well pled fact in the petition about whether Mr. Fall's reliance was reasonable is the same single fact that Ms. Fall paid the $72,000. And again, that's requiring a, a, you know, leap in, in logic to get to the conclusion that he's met the elements of equitable estoppel. And, but even if you get there, even if you say, no, we think he, he, he, that's good maybe you're going to be really liberal and can screw it that way. You don't, there's no explanation for why he waited an additional six months after he admitted, he knew that Ms. Fall was, was insisting that the agreement was correct and should be enforced as written. So it is argued in our brief, there's two things going on here. First, you have the two-year limitations period, but secondly, you have the element of due diligence in, in under 2.14.01. The third element of three is whether the, the moving party acted diligently in seeking relief under section 2-14.01. And as, as referred to the case of in remarriage of Delk cited in our brief, you know, that's an example of a case where they said, look, you, if you can't plead facts, establishing due diligence, your claim fails as a matter of law. And in the Delk case, waiting eight months to, to refile a petition was without any explanation as to why was a basis for finding a lack of due diligence. It wasn't, it wasn't a statute of limitations issue. It was simply on the element of due diligence. And in this case, there's been no factual allegations in, in the pleadings establishing why Mr. Fowle waited an additional six months after the, he had knowledge, expressed knowledge that Ms. Fowle didn't believe that was a mutual mistake. Are there any other questions from the panel? No, thank you. Mr. Friedman, was the rule to show cause or the petition for the rule to show cause filed within two years of entry of the judgment? No, your honor was filed. It was a petition to enforce the judgment. So it was filed when it was clear that Mr. Fowle was not going to comply with the terms of the judgment. So there isn't, it's not a 214-1 petition. There's no limitations period per se. It's, it's, you can go in and file and seek enforcement of a judgment within the time period for enforcing judgments general. You answered my question about 45 seconds ago. Thanks. Sorry. Thank you. I'll ask the question. Are there any other questions based upon my question? No. Thank you. Thank you, Mr. Friedman. Mr. Kessler, you may proceed with your five minute rebuttal. Thank you, Judge. My opposing counsel makes reference to the Delk case in which, upon which Stacey relies in significant part to argue that Mr. Fowle was, did not exercise due diligence. In that case, a litigant had voluntarily dismissed her third amended 214-1 petition after becoming aware roughly one year earlier of all of the facts upon which she relied. She then waited greater than eight months after voluntarily dismissing her third amended 214-1 petition to file her fourth amended 214-1 petition. Subsequent to the decision in that Delk case, the Illinois Supreme Court has explicitly rejected the proposition that any bright line exists for judging whether a petitioner has acted diligently. Due diligence is judged by the reasonableness of the petitioner's conduct under all of the circumstances, and thus a six month delay in requesting 214-1 relief does not, the Illinois Supreme Court tells us, ipso facto demonstrate a fatal lack of diligence. And where the facts sufficient to support a grant of relief under 214-1 are challenged, a full and fair evidentiary hearing must be held. At such a hearing, Danny would have an opportunity to explain with respect to the six month delay, which my opposing counsel references, that upon learning Stacey would dispute the party's actual agreement, he conducted an investigation, he sought counsel, he engaged in communications with Stacey and her counsel in an effort to minimize the cost of litigation. Illinois law does not categorically prohibit any and all delay in filing a 214-1 petition. Rather, it prohibits undue delay. Viewed in the light most favorable to Danny, which is the court's obligation at this stage, the court could not have properly determined that Danny lacked due which he relies upon does not create an exception to the statute of limitations contained within 214-03. It's a doctrine which stops Ms. Fall from asserting that as a defense. Um But we're still back to the issue of there are myriad cases that say 214-01 is restricted to two years unless and or of course you can always say that the agreement is void. That is not what you're alleging here, correct? That's correct, Judge. All right so we're where I don't want to say the word stuck but we are riveted to two years and how do we get around two years with your own allegations in the petition that you know he just he he was lulled into something. If he had if he had if Ms. Fall wants the court as though its obligation is to view the facts in in the light most favorable to her that Ms. Fall wants the court to believe that she wasn't she didn't have a she didn't have this same mutual mistake at the time the parties signed uh their marital settlement agreement. Instead, she made a mistake when six months later she paid $72,500 to Danny Fall from her share of the proceeds rather than insisting on that amount being paid to him from the proceeds prior to their division. She wants the court to presume that her mistake was six months later not at the time of entry of judgment. The court has an obligation to view the facts in the light most favorable to Danny. It is in fact her assertion that is unreasonable that she paid $72,500 without any belief that that's what she in fact owed him but simply because that's what her ex-husband demanded that she pay. That is the most unreasonable inference which she's asking when she's not even in a position to ask. It's not the case the marital balance sheet was indeed incorporated into the petition to modify. It was incorporated by reference. Judge Cerny at the lower level did have an opportunity to see that and the pertinent facts pertaining to that marital balance sheet were pled. It described the equal division on the balance sheet and how the award of assets prior to the sale of real estate and the creation of additional liquidity resulted in Ms. Falls having in excess of the half she was intended to have and Mr. Falls having less than the half that he was. Did the judge determine that that section was ambiguous or clear? The trial court determined that paragraph 2.18 of the marital settlement agreement was unambiguous. That's your question judge. And so was that finding require us to determine that there was no mutual mistake of fact? No not at all judge. Just as in the case of Johnson there was no ambiguity in the document which contained a mutual mistake of fact and which the court properly corrected. A mutual mistake of fact can indeed exist when there's no ambiguity. The case law is very clear on that point and the trial judge erred in court specifically communicated his belief that the court lacks the authority to correct a mutual mistake. Do you agree with him insofar as saying that it's unambiguous? Yes judge the marital settlement agreement is indeed unambiguous. You believe that it unambiguously states that she is to pay the 72,000. It's not supposed to be coming out of the asset. I think if I understood you correctly judge I think it's the reverse. The marital settlement agreement which contains the mutual mistake of fact unambiguously requires that the money be paid to Danny from the sale proceeds prior to their division. When the party's actual agreement and real intent was for that money to come from Ms. Fall's share the party arranged for the money to be paid first from the sale proceeds before any other action was taken. That's what I said to the extent that if it says she shall pay 72,000 then it means it's coming from her it's not coming from a division of the proceeds. To the extent it says that she shall pay yes. Any other questions? No thank you. Ann? No I'll let it go thanks. Okay thank you. We'll take the case under advisement hopefully render a decision in half time. Mr. Marshall you may close out the proceedings. Thank you both. Thank you your honors. Thank you judge.